THE FIRST NATIONAL BANK OF ARKANSAS CITY, KANSAS, v. J. W. SKINNER, as *Sheriff of Cowley County*.

**No. 810.**   (62 Pac. 705.)

1. CORPORATIONS—*Knowledge of Officers—Effect on Corporation.* The knowledge acquired by an officer of a corporation while acting for himself in the interest of his own separate undertaking is not imputable to the corporation, and it will not be bound by the knowledge or the acts of its officer under such circumstances.

2. INSTRUCTIONS—*Pleadings and Evidence.* An instruction not warranted by either the pleadings or the evidence *held* erroneous.

Error from Cowley district court; J. A. BURNETTE, judge. Opinion filed November 16, 1900. Reversed.

*Pollock & Lafferty*, for plaintiff in error.

*C. T. Atkinson*, and *J. E. Torrance*, for defendant in error.

The opinion of the court was delivered by

MILTON, J. : This action was brought by the plaintiff in error against the defendant in error to recover the possession of certain personal property in which

the plaintiff claimed a special ownership under a chattel mortgage executed by the Arkansas City Manufacturing Company and delivered to the plaintiff, to secure an indebtedness evidenced by a promissory note for $2500. The mortgage was duly recorded on March 31, 1893, the day following its execution and delivery, and was duly renewed in March, 1894, by affidavit. In his answer the sheriff justified under an order of attachment issued out of the district court of Cowley county on December 13, 1894, in an action then pending wherein John Leech was plaintiff and W. M. Sleeth, doing business as the Arkansas City Manufacturing Company, was defendant, and averred that the property remained continuously in his possession until the 21st day of February, 1895, when he sold the same at public sale under the order of the court and thereafter duly returned such order of sale with the report of his proceedings thereunder. The answer also averred that the indebtedness evidenced by the note and mortgage under which the plaintiff claimed was not *bona fide;* that the manufacturing company did not owe the debt to the First National Bank; that the mortgage was given for the purpose of covering up the property of the manufacturing company, in order to hinder and delay the creditors of Sleeth, who was the principal owner of the property of the company and also at that time president of the plaintiff bank; and that by reason of the fraud of the plaintiff it was not entitled to recover.

Before the trial the answer was amended by the addition of an averment to the effect that Leech had made a loan of $1000 to the manufacturing company, and that prior to the date when the loan was made Leech had on deposit in the plaintiff bank the sum of $2000, of which fact Sleeth, by reason of his connection with

the bank as its president, had knowledge ; that Sleeth requested Leech to loan the $1000 to the manufacturing company ; that in order to induce Leech to make the loan, Sleeth represented that the bank was interested in the manufacturing company and in fact was a partner with Sleeth in that company, and that the loan was made upon such inducement.   The plaintiff's reply contained a general denial only.

The evidence was conflicting, but that on behalf of the plaintiff tended to prove that on and for several years prior to May 8, 1893, W. M. Sleeth and one Pearson were partners, under the name of the Arkansas City Manufacturing Company, and engaged in the manufacture of furniture in Arkansas City ; that when the mortgage under which the bank claimed was delivered Sleeth was president of the bank, and the manufacturing company was indebted to it in a large sum ; that in April, 1893, John Leech came to Arkansas City and was "shown around" by his old friend and former neighbor, Sleeth, who pointed out houses and lands which he claimed to own ; that on May 8 thereafter Sleeth induced Leech to lend the manufacturing company the sum of $1000, the company giving its note therefor, payable six months after date, signed by the manufacturing company, "per Frank Theaker, manager," and indorsed by Sleeth. Leech testified that before this loan was made Sleeth promised him a place in the factory, and stated that it had no outside debts ; that, in answer to a question asked by Leech, Sleeth stated that the Arkansas City Manufacturing Company consisted of himself and the First National Bank of Arkansas City ; and that the last statement was the inducement that caused the said loan to be made.   Some months after this loan was made, a chattel mortgage covering the property

claimed by the plaintiff was given by the manufacturing company to Leech, at his request, to secure the payment of the note.    The court, over the objection of the plaintiff, gave the following instructions :

"III.   The evidence is undisputed that W. M. Sleeth, the principal owner or manager of the manufacturing company, was also the president of the plaintiff bank, and you are instructed that notice to the president, Sleeth, is notice to the bank.    Whatever his knowledge is or was of any of the matters in controversy in this case was of necessity the knowledge of the bank.

"IV.   If you find from the evidence in this case that the First National Bank, plaintiff in this case, was an actual partner or part owner of the manufacturing company, and by the act of its president induced Leech to part with his money, and to put it into that company, and got the benefit of it, then they cannot rely upon their mortgage in this case to the exclusion of Leech. That you are to determine from the evidence in this case."

The court also charged that the real question for the jury to determine was whether the indebtedness evidenced by the plaintiff's note and mortgage was *bona fide,* and that if they found that the manufacturing company actually owed the bank the sum stated in the note and mortgage, then their verdict should be for the plaintiff.    Each party submitted three special interrogatories to the jury, and all were answered positively.    To the plaintiff's interrogatories the jury answered :   (1) That the manufacturing company, by W. M. Sleeth, gave the note involved in this action to the bank ;  (2) that at the time the note was given the manufacturing company did not owe the bank the sum of $2500, as evidenced by the note ;  and (3) that the manufacturing company gave the chattel mortgage mentioned in the plaintiff's petition "to secure said promissory note and indebtedness."

To the defendant's interrogatories the jury answered: (1) That the plaintiff bank had knowledge or notice of the manner in which Sleeth obtained the loan from Leech; (2) that the plaintiff received the benefit of Leech's money so loaned; and (3) that it was a partner of Sleeth in the manufacturing company.

Thereupon the plaintiff filed a motion to set aside the second finding based on plaintiff's interrogatories and the second and third findings based on the defendant's interrogatories, the ground of the motion being that such findings were contrary to the evidence and untrue, and were returned by the jury on account of their bias and prejudice. The court sustained the motion as to the first finding complained of and overruled it as to the other findings.

A careful consideration of the questions discussed by counsel leads us to conclude that the trial court erred in giving the instructions hereinbefore quoted, in overruling the plaintiff's motion to set aside the third finding in answer to the defendant's interrogatories, and in overruling the motion for a new trial.

1. Instruction No. 3, to the effect that notice to Sleeth, the president of the plaintiff bank, was notice to the bank, and that his knowledge was its knowledge as to any of the matters in controversy in this case, was erroneous, for the reason that the evidence concerning the transaction in which the loan was made by Leech to the manufacturing company fails to show that Sleeth in any way represented the bank. He was acting for himself in the interests of his own separate enterprise, and not as the agent of the bank, and in fact it is not claimed that he pretended to represent the bank therein. The answer does not allege that the bank was a partner with Sleeth in the manu-

facturing company. The allegation is that Sleeth so represented, and that the loan was made because of such representation. It follows that the knowledge of its president was not the knowledge of the bank. "The knowledge acquired by the officers or agents of the corporation, while not acting for the corporation, but while acting for themselves, is not imputable to the corporation." (4 Thomp. Corp. § 5254.) In the case of *Wickersham v. Chicago Zinc Company*, 18 Kan. 481, the court held that "neither the acts nor knowledge of an officer of a corporation will bind it in a matter in which the officer acts for himself, and deals with the corporation as if it had no official relations with him."

2. For the reasons already stated, the fourth instruction was clearly improper. It was neither alleged nor testified to that the First National Bank was a partner in the manufacturing company. That the jury were influenced by this instruction is shown by the special finding. Since the instruction was not warranted by either pleadings or evidence, it must be regarded as erroneous.

3. The jury found that, at the time the note was given by the manufacturing company to the plaintiff bank, the company did not owe the bank the debt evidenced by the note. On motion of plaintiff, this finding was set aside as being contrary to the evidence. The court had instructed the jury that if they found that the debt in question was *bona fide*, and that the manufacturing company actually owed the sum to the bank, then their verdict should be for the plaintiff. As the court held that the finding was contrary to the evidence, it would seem to have been proper to hold that the general verdict was found in disregard of the instruction just referred to. We think the motion for

a new trial should have been granted on account of the errors pointed out above.

Whether or not the inducement which Leech claimed led him to make the loan to the manufacturing company—that is, the representation that the bank was a partner in the manufacturing company—was an inducement upon which he had a legal right to rely, is a question which counsel have discussed at length in their brief.   In our view, the controversy on this point is more interesting than important, for the reason hereinbefore stated, that it was not alleged in the defendant's answer nor shown in any way by the evidence he presented, that the bank was actually a partner in the manufacturing company.

The judgment of the district court will be reversed and the cause remanded for a new trial.