WISDOM et ux. v. PEEK et al.   (No. 6337.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 11, 1920. On Motion for Rehearing, March 24, 1920.)

1. **Cancellation of instruments** ⬤≈24(2)—**Offer to return consideration not necessary in action to cancel deed given on consideration of agreement to maintain grantor during lifetime.**

In action by grantor's heirs to cancel deed made in consideration of grantee's promise to support and maintain grantor during his lifetime, it was unnecessary, as a basis for the action, to offer or tender the return of any consideration; none having been paid in money or property at execution of deed.

2. **Appeal and error** ⬤≈172(3)—**Defendant not asking for affirmative relief cannot complain of relief given him on plaintiff's pleadings.**

In action by grantor's heirs to cancel deed executed in consideration of grantee's agreement to support grantor for life, where grantee sought no affirmative relief, in his pleading, for improvements, support, or maintenance, and asked no issues to be submitted to the jury for its finding in reference to value of use of the property, he could not complain on appeal of the relief given him on plaintiff's pleading or of failure to give him other relief.

3. **Deeds** ⬤≈211(1) — **Evidence held to show mental incompetency.**

Evidence *held* sufficient to show that grantor at time of execution of deed was in a condition of senile dementia and unable to comprehend sufficiently the consequences of his act.

4. **Deeds** ⬤≈78—**Mental capacity held for jury.**

In action to cancel deed, question of whether grantor had mental capacity to comprehend the nature and effect of the execution of the deed *held* for jury.

5. **Trial** ⬤≈350(3) — **Submission of issues of mental capacity and undue influence at same time held not error.**

In action to cancel deed for mental, incompetency and undue influence, court did not err in submitting the issues of mental capacity and undue influence at the same time, since court might have thought that in view of the testimony the jury could find grantor to have had mental capacity enough to know what he was doing and yet may have been unduly influenced.

6. **Cancellation of instruments** ⬤≈52—**Finding of mental incapacity and of undue influence held not inconsistent.**

In action to cancel deed, finding that grantor did not have sufficient mental capacity to comprehend the nature and effect of his act *held* not inconsistent with a finding that he was unduly influenced.

7. **Appeal and error** ⬤≈1070(2)—**Findings of undue influence in action to cancel deed harmless, where grantor was found to have been mentally incompetent.**

In action to cancel deed where jury found that grantor did not have sufficient mental capacity, a finding that he was unduly influenced was immaterial and harmless.

8. **Trial** ⬤≈358—**Judgment not to be entered on contradictory irreconcilable findings.**

It is error for trial court to enter a judgment upon contradictory findings that cannot be reconciled.

On Motion for Rehearing.

9. **Insane persons** ⬤≈66—**Consideration received from person acting in good faith to be returned in ·specie if possible.**

When a party, dealing with an insane person acts in good faith and without knowledge

of such insanity, he must, to avoid the transaction, return the consideration received in specie if possible.

**10. Judgment ⊕⧫251(2)—Grantee in order to recover, upon cancellation of deed, for support of grantor, must allege and prove value of support exceeds rental value.'**

In grantor's heirs' action to cancel deed in consideration of grantee's agreement to support grantor during his lifetime, where plaintiffs alleged that rental value of premises while in grantee's possession was an adequate compensation to grantee for the support and maintenance of grantor, it was incumbent upon grantee, in order to recover for such support, to allege and prove that value thereof exceeded the rental value.

**11. Pleading ⊕⧫139 — Defendant required to plead amount due him if cancellation is granted.**

In action to cancel deed, it is defendant's duty to plead specifically such sums as he contends should be paid him if rescission is granted.

**12. Cancellation of instruments ⊕⧫55—Equity will retain jurisdiction to do complete equity between parties.**

When a court of equity has obtained jurisdiction of a bill for rescission, and a decree in accordance with the prayer is warranted, it will retain jurisdiction for the purpose of all the rights and claims of the parties growing out of the transaction complained of so as to do complete equity and leave nothing for future litigation which it can dispose of in the exercise of its equitable powers upon the parties before it.

**13. Cancellation of instruments ⊕⧫55—Defendant's failure to set up equities no ground for refusal to render judgment of cancellation or to provide that judgment is without prejudice to any such claim.**

Defendant's failure to set or prove any equities to which he is entitled if court decrees rescission is no ground for refusing a cancellation, or for providing in judgment that cancellation was decreed without prejudice to any claim of equities which the defendant could have urged but failed to plead.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Charles P. Peek and others against Charles W. Wisdom and wife. Judgment for plaintiffs, and defendants appeal. Affirmed.

C. A. Davies and W. H. Lipscomb, both of San Antonio, for appellants.

J. D. Martin and E. H. Lange, both of San Antonio, for appellees.

COBBS, J. This suit was instituted by appellees, the heirs of John C. Peek and his wife, Amanda J. Peek, both dead, to recover from appellants the land in controversy, which had been the homestead of John C. Peek and his wife during their lifetime. She died on the 3d day of January, 1892, and he died April 25, 1917.

The suit was to cancel a deed made by J. C. Peek to C. W. Wisdom, dated the 28th day of February, 1916, substantially in the following terms:

"State of Texas, County of Bexar—ss.:

"Know all men by these presents: That I, J. C. Peek, of the state and county aforesaid, for and in consideration of proper support and maintenance during the remainder of my life by C. W. Wisdom, also of said county and state, have granted, bargained, sold, and conveyed, and do, by these presents, grant, bargain, sell and convey unto the said C. W. Wisdom, all of my right, title and interest (save and except my right to use and occupy the same during the remainder of my life, which is hereby reserved), in and to the following described properties, to wit: * * *

"It is expressly understood that the heirs or assigns of the grantee herein shall be entitled to all the title and rights herein vested in and conferred upon said grantee upon the performance by such heirs or assigns of the agreement constituting the consideration for the execution of this deed."

The land conveyed consisted of 140 acres and improvements, situated in Wilson and Bexar counties.

The ground for recovery is based upon the alleged fraud and undue influence committed by appellant in securing from J. C. Peek the conveyance, and on account of the further alleged ground that his advanced age and his weakened physical and mental infirmity rendered him incapable of making a valid contract and deed of conveyance; and that the bargain itself that appellant secured from Peek was fraudulent and unconscionable, in that the property he secured thereby was reasonably worth $7,000, and when the contract was made and duly executed it was apparent to the said Wisdom, from said Peek's advanced age and his apparent physical and mental infirmity, that he could not live long, nor make a valid contract of sale of said property.

The defense was general denial and plea of limitation, claiming under the five-year statute.

The case was tried by a jury, submitted only on two special issues: The first, as to whether John C. Peek possessed sufficient mental capacity to comprehend the nature and effect of his act; and, second, Was the deed procured by the exercise of any undue influence on the part of the defendant Wisdom? The answer of the jury to the first question was, "He did not," and to the second the answer was, "It was," and the court thereupon entered its judgment in favor of appellees for the land sued for, without rents.

The first, second, and third assignments insist, because the appellees did not offer

and tender to do equity, and restore, or offer to restore, the consideration or the value thereof which John C. Peek received from the defendant Chas. Wisdom as consideration for the deed sought to be canceled, they were not entitled to a judgment canceling the deed and rescinding in toto the entire transaction.

His proposition is that one who seeks to rescind a contract or conveyance must return all the benefits; where it is entire, it must be rescinded in toto or not at all.

The suit is to cancel a deed, held to be a nullity because secured from J. C. Peek, deceased, fraudulently and by undue influence; and, further, because he was totally incapacitated mentally and physically to make such a contract or execute such a deed.

[1] As a basis for this suit, it was unnecessary to offer or tender the return of any consideration, none having been paid in money or property at its making and execution. The only consideration was that expressed in the deed, to care for, support, and maintain J. C. Peek during his lifetime. The appellant sought no affirmative relief in his pleading for improvements, support, or maintenance. His defense was a denial and a claim under the statute of limitations of five years. The appellant, by his acts, waived the limitation plea and stood on the general denial, and submitted no issue to the jury at all. There were no equitable claims or demands presented to be submitted by the pleadings or special charges requested of the court to be passed upon by the jury. Moore v. Giesecke, 76 Tex. 551, 13 S. W. 290.

[2] There was no recovery allowed for rents, presumably because appellee alleged the rental value of the property for one year and two months was adequate compensation for the support and maintenance of said Peek during the time, and the court allowed no judgment for rent, because he said:

"It not appearing to the court that the value of the rents on said premises is in excess of the value of the board and maintenance of the deceased."

Appellant asked no issues to be submitted to the jury for its finding in reference to values, nor for any affirmative relief whatsoever, and cannot complain of the relief given him on appellees' pleading, or that no other was given him if he were so entitled. Patrick v. Roach, 21 Tex. 255.

[3] The evidence showed prior to the conveyance appellant consulted with his lawyer, a reputable member of this bar, who requested that he might see said Peek before he would advise the conveyance, and, after satisfying himself that J. C. Peek, deceased, had the mental capacity sufficient to contract, this deed was then duly executed, and not before; but that issue was sharply controverted. There was much testimony introduced by both sides as to the mental capacity of said Peek and as to the influence supposed to have been exercised by appellant to secure the deed. As it was all before the jury without objection and sufficient to sustain their finding that he did not have such capacity, it is not necessary to set it out further in detail, but sufficient to say there was ample evidence to show that he was in a condition of senile dementia at the time he made the contract, and unable to comprehend sufficiently the consequences of his act. Black on Rescission and Cancellation, vol. 1, §§ 257 to 263, inclusive.

[4-6] We do not think there was any error of the court in submitting the first issue as to whether J. C. Peek had the mental capacity to comprehend the nature and effect of the act, or to submit the other issue of undue influence at the same time. We do not believe that the jury were misled thereby, or that the finding is contradictory. At any rate, there was ample testimony to support their finding, in response to the first issue, that he did not have the mental power to comprehend the nature of his act.

We can see no harm done in this case in submitting the second question. The court may have thought, in view of the appellant's testimony, the jury could find he had mental capacity enough to know what he was doing, yet may have been unduly influenced too.

[7] Therefore, when the jury answered he did not have the mental capacity, the answer to the second question was rendered immaterial and harmless.

[8] While true, as said in Indiana Co-op. Co. v. Gray, 184 S. W. 242, it would be error for trial court to enter a judgment on contradictory findings that could not be reconciled and thereby harmful, we cannot see such a contradictory finding here that has that effect. That and the case of Scott v. Townsend, 106 Tex. 322, 166 S. W. 1138, seem to be relied upon to establish appellants' proposition. In the Scott Case the court is discussing a will contest case, and is not in point. It is true, whether to make a valid will or valid conveyance, there must be sufficient mental power to know and comprehend the nature of the act or transaction. That power implies some mental capacity, and when the ground to set aside a will, or deed, is predicated solely upon undue influence, it presupposes the existence of a strength of mind capable to act for itself, if let alone. In this case the right to cancel is based upon either ground, and the testimony is conflicting upon both. This case presents one in which the mind is incapable to contract, as well as to also suggest there was undue influence exercised even though it was upon an incapable mind. The result is the same.

It may be the court, in submitting the first issue, should have instructed the jury not to answer the second, if the first was answered in the affirmative—as wholly unnecessary.

So, in this case, the finding of the first issue in the affirmative rendered a finding in the second harmless and unnecessary, but not error. If he did not have the mental capacity to make the contract, or, in other words, to understand the "nature and effect of such act," we need go no further with the discussion of undue influence with reference to this case, but lay that issue out of sight. In the case of Gibson v. Fifer, 21 Tex. 264, the suit was predicated both on mental weakness and undue influence, and the deed was set aside. See, also, Black, supra, §§ 262, 263. These cases are authority for the consideration of both issues.

There were no objections made, or bills of exception taken and filed to the court's charge, or any special issue requested by appellant for submission of any defense whatever. We have examined and considered separately each and every one of the assignments as they were separately presented, and find no reversible error assigned; and they are each overruled, and the judgment of the court is affirmed.

### On Motion for Rehearing.

The complaint is urged again that it was fundamental error in affirming the judgment that the value of said rent of said premises was equal to the board and maintenance of John C. Peek, deceased, furnished him by appellants, because there was no evidence introduced on the trial as to the value of the board and maintenance.

The appellee tendered an issue as to the value of the use of the property, and Mr. Storms testified without objection, as follows:

"I am acquainted with the annual rental value of such land as that in that vicinity; land rents for one-third of the corn and one-fourth of the cotton, the way I used to rent mine there, and I have rented land in patches to cultivate that way at $3 an acre. I think that is about what it would be, $3 an acre, money rent, and pasture land leased for about 35 or 40 cents an acre. I consider that the market rental value. That was the custom over there. I think that makes it the market value, I reckon."

He also testified there were 140 acres of the market value of $40 per acre and 60 acres in cultivation.

No claim was made by appellant because of the support of Mr. Peek. The value of personal services performed, board, and maintenance, was peculiarly within the knowledge of appellant, and it was not incumbent upon appellee to either pay more than was due or prove such matters. There was no property or money received by appellee that he could be required to return as a condition to this recovery. They were willing to so far do equity as to waive any claim for the use and value of the land in rents and let them be set off by appellants' use, occupation, support, and maintenance of Mr. Peek.

Appellant never met the issue tendered. He did not ask for reimbursement for the value of his improvements, if any made, services, board, and support, for caring for Mr. Peek, if worth more than appellee alleged. On the contrary, he stood purely on a legal defense, such as general demurrer, plea of not guilty, and plea of limitations. He filed a general exception to the petition, but secured no ruling on it. He offered no proof whatever on issue of rental value, or to any services performed. He presented no request for any charge to the jury on such issue. We can see no fundamental error in the action of the court in entering the judgment.

It makes no difference whether the fraud committed was because of the defect in the mental powers of Peek that he was not able to contract, or because of his weak intellect he was induced to make this deed; the appellants were entitled to the judgment in this case, and there was no necessity for the appellee, as a condition precedent to recover, to make any offer to return the benefits, if any, said Peek received. As said in Smith v. Ryan, 191 N. Y. 452, 84 N. E. 402, 19 L. R. A. (N. S.) 461, 123 Am. St. Rep. 609, 14 Ann. Cas. 505:

"The ground on which such deeds are avoided in case of fraud is that the party has been misled by deception, and has never assented to the contract. The ground on which the deed of an incompetent is avoided is that by infirmity of intellect he is incapable of giving assent. The element that avoids the deed is the same in the two cases—lack of assent—and it is not material whether it exists through deceit, or through imbecility."

Where parties have dealt with minors and paid consideration for the land, and the minor has wasted it, he will not be required to tender it back or suffer it to be a charge upon his property, and under no circumstances in such a case required to pay the money back before recovering the land. Bullock v. Sprowls, 93 Tex. 191, 54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849.

This case was followed and cited with approval in Williams, Guardian, v. Sapieha, 94 Tex. 436, 61 S. W. 115. In this case the court holds there is no difference in principle between a deed made by a minor and one by a lunatic. They are neither void, but voidable only. In neither case can they be required to return the money not on hand. The court said:

"We answer the second question that the facts stated in connection with the certificate do not show that the lunatic still had in his possession any of the money paid for the land or any property acquired with it, nor that it had been expended for him or by him in the purchase of necessaries. In the absence of such proof, he would not be required to return the consideration received. Bullock v. Sprowls, 93 Tex. 188 [54 S. W. 661, 47 L. R. A. 326, 77 Am. St. Rep. 849]."

[9] The rule established in this and other states seems to be, when a party dealing with

an insane person acts in good faith and without knowledge of such insanity, consideration received in the bargain must be returned in specie if possible. First Nat. Bank v. Skinner, 10 Kan. App. 517, 62 Pac. 705; Jamison v. Culligan et ux., 151 Mo. 410, 52 S. W. 224; Creekmore et al. v. Baxter et al., 121 N. C. 31, 27 S. E. 994; Miller v. Barber et al., 73 N. J. Law, 38, 62 Atl. 276. It is held in Wager v. Wagoner, 53 Neb. 511, 73 N. W. 937:

"Finally it is contended that Wager should receive restitution of the consideration by him paid. This, in the case of an insane person, is not essential as a condition of granting relief. Dewey v. Allgire, supra [37 Neb. 6, 55 N. W. 276, 40 Am. St. Rep. 468]; Rea v. Bishop, 41 Neb. 202, 59 N. W. 555. It did not appear that the ability existed to restore the consideration in specie. The right to recover it back as money had and received, or otherwise, was not a question involved in the case, and is not now open to consideration."

If the appellant was entitled to more relief than plaintiff tendered in his pleading, there was no pleading suggesting it, or request made to submit it to the jury.

No money or other property was paid for the land. The consideration was not in specie, but in support and maintenance, which of course was of value; but it did not devolve upon appellee to set that out, while appellant only claimed the land by way of plea of not guilty and limitations. There was no plea for any improvements made in good faith, nor any prayer over for any other relief.

As appellant so urgently insists we have erred, we have gone over and re-examined the case and all the authorities cited by him, and we specially have examined the following cases cited in the supplemental motion, to wit: Jamison v. Culligan et ux., 151 Mo. 410, 52 S. W. 224; Gilgallon v. Bishop, 46 App. Div. 350, 61 N. Y. Supp. 467; Am. Digest, Dec. Ed., vol. 10, Insane Persons, § 66—and have examined not only the cases cited in the briefs, but many more besides. They all seem in harmony with the views expressed by us to the general effect there should always be tendered back what was left of any consideration received as a condition precedent to having conveyances of such incompetents vacated. Jefferson v. Rust, 149 Iowa, 594, 128 N. W. 954.

[10] It is largely a question here of pleading and proof. If we should treat the rights of appellant as coming under the head of necessaries furnished, we find no pleading or proof to justify us presented in this record. The pleading of plaintiff was sufficient to tender the issue in the following language:

"That the said Wisdom and wife have been occupying the premises aforesaid since about the first of February, 1916, and first became occupants of said premises under a contract to pay $100 for the use of said premises for the year 1916 and in pursuance thereof pay the sum of $25, but have refused and failed to pay

any thing since. That the rental value of said premises for the period of one year and two months would have been adequate compensation to the said Wisdom for the support and maintenance of the said Peek during the same period."

It was not excepted to specially as insufficient. There was a general exception to the petition, but no ruling on it. If the services performed and money expended for him to purchase necessaries amount to more than the value alleged by plaintiff, such amounts were peculiarly within the knowledge of appellant, was not incumbent upon appellee to allege, but was incumbent both upon appellant to allege and prove.

Having nothing before us on the subject other than plaintiff's pleading, the facts proven, and the judgment of the court thereon, we are not permitted to say there was error. If the appellee was entitled to more, and to have a judgment fixing a lien on the property to secure it, in the absence of any pleading and issue of fact that should have been submitted to the jury, other than presented by appellee on the subject, it was not presented below, and in the state of this record cannot be considered here. In the absence of pleading and proof as to the value of the board and care furnished, we cannot, as was done in the cited case of Gilgallon v. Bishop, 46 App. Div. 350, 61 N. Y. Supp. 467, adjudge any amount to be paid by appellee.

[11] The plaintiff having pleaded that the rentals equalled any benefits he received, showed a prima facie case entitling him to rescind without restoring the value of benefits. This was certainly equivalent to the ordinary case in which plaintiff offers to restore benefits received. It is the duty of the defendant to plead specifically such sums as he contends should be paid him if rescission is granted. Black on Rescission and Cancellation, § 674. In this case the defendant failed to plead any such claims, and failed to introduce evidence of the value of the necessaries furnished plaintiff. He now stands upon the proposition, which, if applicable in this case, would be applicable in all, that the burden was upon plaintiff to prove the extent of defendant's claim, before he would be entitled to rescission.

[12, 13] The plaintiff proved the value of the rents, and the defendant introduced no evidence of the value of the necessaries furnished. When a court of equity has obtained jurisdiction of a bill for rescission, and a decree in accordance with the prayer is warranted, it will retain jurisdiction for the purpose of adjusting all the rights and claims of the parties, growing out of the transaction complained of, so as to do complete equity and leave nothing for future litigation, which it can dispose of in the exercise of its equitable powers upon the parties before it. Black on Rescission and Cancellation, § 689. If the defendant refuses to set up or prove any equi-

ties, it must be assumed that he does not contend that he is entitled to any, if the court decrees a cancellation. Such failure on his part could not be ground for refusing a cancellation, nor could it be ground for providing in the judgment that the cancellation was decreed without prejudice to any claim of equities which the defendant could have urged but failed to plead.

The motion for a rehearing is overruled.